# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| **SPENGA INC. and SPENGA HOLDINGS, LLC**  )  | Civil Action No.: 4:25-cv-251 |
| ) | |
| **Plaintiffs,**  ) | |
| ) | |
| v.  ) | |
| ) | |
| **KRISTIN ANTOINETTE HOWARD and**  ) | |
| **MICHAEL THOMAS**  ) | |
| ) | |
| **Defendants.**  ) | |
| ) | |

## COMPLAINT

Plaintiffs, Spenga Inc ("**SI**") and Spenga Holdings, LLC ("**SH**") (SI and SH are collectively referred to as "**Spenga**"), by and through their attorneys, brings this action against Defendants, Kristin Antoinette Howard and Michael Thomas (collectively, the "**Defendants**"), and allege as follows:

## PARTIES

1. Plaintiff, SH, is a Delaware limited liability company with a principal place of business at 13161 W 143rd Street, Suite 103, Homer Glen, Illinois 60491.

2. Plaintiff, SI, is an Illinois corporation with a principal place of business at 13161 W 143rd Street, Suite 103, Homer Glen, Illinois 60491.

3. Defendant, Kristin Howard, is an individual person and upon information and belief is domiciled in Little Elm, Texas and is a citizen of the state of Texas.

4. Defendant, Michael Thomas, is an individual person and upon information and belief is domiciled in Little Elm, Texas and is a citizen of the state of Texas.

## JURISDICTION AND VENUE

3. This is a suit for false designation of origin/trademark infringement under 43(a) of the Lanham Act, 15 U.S.C, § 1051 et seq.; trademark dilution under 35 U.S.C. § 1125(c); violation of the Anti-Cybersquatting Act; and for business defamation. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and the doctrines of ancillary and pendent jurisdiction.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391 because most of the acts alleged in this Complaint occurred in this judicial district.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

5. Plaintiff, SH, sells franchise systems related to the establishment, development, opening, and operation of a fitness studio that features (a) fitness training services and related exercise equipment designed to combine the benefits of spin, yoga and other strength training via classes and memberships, as well as any other services that SH designates or authorizes in writing, and (b) various branded and other retail products that SH authorizes for sale in writing (the "**System**"), utilizing the business methods, standards and specifications associated with the System in the United States.

6. Plaintiff, SI, is the owner of various federally registered trademarks, including but not limited to: Nos. 4,833,071; 4,833,069 and 4,997,395 for SPENGA (the "**Registered Marks**") in connection with health club services, fitness equipment, and several other goods.

7. Plaintiffs have continuously used and are currently using the Registered Marks in connection with the above-mentioned services and Plaintiffs have invested significant time, money and resources into developing the goodwill associated with the Registered Marks.

8. Plaintiff previously sold a Spenga franchise in Frisco, Texas where a franchisee now operates a Spenga franchised business.

9. In or around 2024, Defendants became members of the Frisco, Texas Spenga franchised business.

10. Approximately, two months ago, the Defendants arrived at the Frisco, Texas franchised business and were upset by the way another member parked her vehicle. Unable to just ignore what she thought was a poor job parking the vehicle, Howard decided to flip her middle finger at the other member. This instigated an argument that continued as the members entered the franchised business. After much argument over who did what, the Defendants left the franchised business unhappy with how the manager of the franchised business dealt with the immature arguments taking place inside the studio.

11. After the incident at the Spenga-Frisco location, the Defendants were yet again unable to control their emotions and created several social media profiles, including one on Next Door, purporting to be "Spenga-Frisco" (the "**Infringing Social Media Accounts**").

12. Howard did not stop there. She also registered a website, www.spengafrisco.com (the "**Infringing Domain**"). The Infringing Social Media Accounts and Infringing Domain are collectively referred to as the "**Defamatory Accounts**".

13. Notably, Defendants used the Registered Marks in creating the Infringing Social Media Accounts falsely claiming to be the official account for "Spenga Frisco" and included purposely inflammatory language that Spenga Frisco was offering discounts to only white people. A screenshot of the fake racist advertisement is below from the fake Next Door account Defendants created:

**SPENGA Frisco**
Fitness facility

Fave   Message

Closed

16710 Farm-to-Market Road 423, Frisco, TX

10.55 miles away   Get directions

**Recommendations**

Be the first to write a recommendation and help neighbors.

B  Write your recommendation

**Our Story**

Hi neighbors! Join SPENGA Frisco today. We're offering 50% your first 3 months for whites only.

**More Info**

Visit website

14.     Plaintiffs have heard directly from their customers and/or potential customers who believed that there was an association between the Plaintiffs and the owner of the Defamatory Accounts. How could they not make such an association when the Defendants created what purported to be the official Spenga Frisco Next Door account?

15.     Howard even went so far as to have Thomas post a review on the Spenga's Facebook account in which she "doxed" the other Spenga member involved in the incident, see the screenshot below:



16. Further, Thomas made another defamatory post on Reddit regarding the Spenga Frisco location:


> **r/Spenga_Fitness** · 2 mo. ago
> [deleted]
>
> **SPENGA Frisco is disgusting**
>
> On Friday, December 27, I witnessed my wife being assaulted by another member at this location. The incident occurred when the individual deliberately ran in front of her to open the door and intentionally swung it into her as she was entering. This was not an accident—it was a deliberate act.
>
> What happened next was even more disturbing. The acting manager, Shakir, displayed an alarming level of unprofessionalism in handling the situation. She accused the member who was assaulted of lying, dismissed their concerns, rolled her eyes as they explained what happened, and even told her to "act like an adult" and go to her class —despite the fact she had just been assaulted. This kind of behavior is unacceptable.
>
> The only positive note in this situation was Kaci, who witnessed Shakir's mishandling of the incident and conducted herself with professionalism and empathy. Unfortunately, her efforts were overshadowed by the poor leadership displayed by others on the management team.
>
> I did genuinely enjoyed this club but I will be cancelling my membership. If you value professionalism, safety, and respect, I strongly recommend reconsidering joining this location.
>
> Now we posted this review on Facebook and Google and not only did the assaulter stalk down the review to further mock my wife's disability, yes my wife is disabled, in the comments but SPENGA Frisco took down any comments that reflect negatively on the assaulter. They even doxxed my wife in a Google review, claimed she assaulted the other woman (yet let my wife go to her class)... all while mocking her disability.
>
> The owner and GM of this location are the purest of trash.
>
> I just wanted to share our story as to this day still both the woman who assaulted my wife and the owners of SPENGA Frisco continue to harass and dox a disabled person.

17. After learning of the Defamatory Accounts, counsel for Plaintiffs sent Defendants a cease-and-desist letter (the "**C&D Letter**") demanding that they take down all of its fake accounts and cease-and-desist use of all of Plaintiffs' Registered Marks.

18. After the C&D Letter was served, it appeared that the issue was resolved because the infringing social media accounts and the Infringing Domain had been deleted.

19. Approximately 30 days after the C&D Letter was served, Howard, who learned nothing from the last time she decided to use the middle finger to express her frustration, sent Plaintiffs' counsel an email which included only a middle finger emoji.

20. As a result of receiving this email, counsel decided to re-check the Infringing Domain which had now been changed from a fake Spenga website to display the message below with an offer to sell it from $200,000 as follows:

> **OR WHAT?!**
>
> **Website for sale $200,000**

21.     Notably, on February 26, 2025, Howard went on an over two-hour, unhinged rant on the streaming platform, Twitch, in which she admitted at one point that she purchased the Infringing Website for the purpose of selling it back to Plaintiffs and engaged in multiple other defamatory, untrue statements about the Plaintiffs, its Registered Marks, their franchisee and its staff.  For example, Howard entitled the live broadcast as "SPENGA doxed me and my family" which is untrue.

22.     Spenga's customers and prospective customers have seen the defamatory statements Infringing Social Media Accounts and the Infringing Domain that the Defendants intentionally created for the sole purpose of damaging the Plaintiffs' brand and reputation.

23.     The Plaintiffs' Registered Marks and associated goodwill have been irreparably damaged by the Defendants' actions in creating the Infringing Social Media Accounts and Infringing Domain.

## CAUSES OF ACTION

### COUNT I – VIOLATION OF ANTICYBERSQUATTING CONSUMER PROTECTION ACT UNDER 15 U.S.C. § 1125(d)(1)(A)
**(Against Defendant Howard)**

24. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs 1 through 23, as if fully set forth herein.

25. Howard is the owner of the domain name, www.spengafrisco.com (the "**Infringing Domain**").

26. Howard, without knowledge or consent of Plaintiffs, began hosting a website at the Infringing Domain, for the purpose of selling the domain to Plaintiffs as she admitted in her live stream on February 26, 2025, and on the Infringing Domain itself (as depicted above).

27. Plaintiffs' Registered Marks were distinctive at the time of the registration of the Infringing Domain.

28. Plaintiffs' Registered Marks were famous at the time of registration of the Infringing Domain.

29. Upon information and belief, and Howard's own words, Howard had a bad faith intent to profit from the use of Plaintiffs' Registered Marks.

30. Defendant Howard registered and used the Infringing Domain name subsequent to the enactment of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A).

### COUNT II – TRADEMARK DILUTION UNDER 35 U.S.C. § 1125(c)
**Against All Defendants**

31. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs 1 through 30, as if fully set forth herein.

32. Plaintiff, SI, is the owner of various federally registered trademarks, including but not limited to: Nos. 4,833,071; 4,833,069 and 4,997,395 for SPENGA in connection with health club services, fitness equipment, and several other goods.

33. Plaintiff, SH, and its franchisees use the Registered Marks in their operation of the System and rely on the goodwill associated with the Registered Marks.

34. Defendants' unauthorized use and defamation of the Registered Marks dilutes the distinctive quality of the Registered Marks in violation of 15 U.S.C. § 1125 (c) because the vile statements made on the Defamatory Accounts are damaging to the goodwill associated with Spenga's brand.

35. Upon information and belief, Defendants willfully intended to trade on the reputation of Plaintiffs or to cause dilution of Plaintiffs' Registered Marks.

36. As a result of Defendants' wrongful conduct, Plaintiffs have suffered and continue to suffer irreparable harm.

### COUNT III – TRADEMARK DEFAMATION UNDER 15 U.S.C. § 1125(a)

37. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs 1 through 36, as if fully set forth herein.

38. Plaintiff, SI, is the owner of various federally registered trademarks, including but not limited to: Nos. 4,833,071; 4,833,069 and 4,997,395 for SPENGA in connection with health club services, fitness equipment, and several other goods.

39. Plaintiff, SH, and its franchisees use the Registered Marks in their operation of the System and rely on the valuable goodwill associated with the Registered Marks.

40. Defendants have used and is currently using the "Spenga" in connection with the Infringing Social Media Accounts, as well as the Infringing Domain name, www.spengafrisco.com.

41. Defendants created the Infringing Social Media Accounts and Infringing Domain for the purpose of defaming the Plaintiffs' Registered Marks by making racists posts and attributing them to the Plaintiffs and their franchisee.

42. Defendants' unauthorized use of the Registered Marks is likely to cause confusion, mistake, or deception as to:

    a. the extent of Defendants' affiliation, connection, or association with Plaintiffs;

    b. the origin, sponsorship, or approval of Defendants' product, services, or commercial activities by Plaintiffs or;

    c. the reputation and goodwill associated with the Registered Mark.

43. Plaintiffs have been irreparably damaged by Defendants' unauthorized use of the Registered Marks and are likely to be further damaged by Defendants' unauthorized use of the Registered Marks, in particular, Defendants' use of the Registered Marks is likely to cause confusion as to the origin of and damage the goodwill associated with the Registered Marks.

44. Defendants began their unauthorized use of the Registered Marks with full knowledge of Plaintiffs' rights of ownership under the Registered Marks; whereby, Defendants have willfully infringed such rights with the intent to damage the Registered Marks

## COUNT IV – BUSINESS DEFAMATION

45. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs 1 through 44, as if fully set forth herein.

46. As discussed above, Defendants have continuously published false statements about Plaintiffs, its franchisees and their staff. For example, Defendants published statements on the Internet insinuating that Plaintiff will provide discounts to members based on their race and falsely claiming the Plaintiffs "doxed her and her family".

47. Defendants' statements were published for third-party consumption/viewing, without permission from Plaintiff.

48. Defendants' statements were published with malicious intent for the purpose of harming Spenga.

49. As a result of Defendants' statements, Spenga has suffered damage to its reputation and the goodwill associated with its brand.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement against the Defendants and in favor of Plaintiffs, on each count of this Complaint. Specifically, Plaintiffs seek: (1) statutory damages as a result of Defendant's conduct under 15 U.S.C. § 1125, (2) an order requiring Defendants to assign the Infringing Domain to Plaintiffs, (3) an order for a preliminary and permanent injunction preventing Defendants from using Plaintiffs' Registered Marks; and (4) attorney's fees pursuant to 15 U.S.C. § 1117.

Dated: March 12, 2025

*Respectfully submitted by:*

By: _____
Erica Dotras
Texas Bar No. 24096981
2425 N. Central Expy., Suite 200
Richardson, Texas 75080
erica.dotras@mullinlawpc.com
972-852-1706

Frank A. Reino – PHV to be Filed

Matthew D. Wilson – PHV to be Filed
Fisher Zucker, LLC
21 S. 21st Street
Philadelphia, PA 19103
freino@fisherzucker.com
mwilson@fisherzucker.com
215-825-3100

Attorneys for Plaintiffs