EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS


SPENGA INC. and SPENGA HOLDINGS, LLC,

Plaintiffs,


v.                              Civil Action No. 4:25-cv-251


KRISTIN ANTOINETTE HOWARD and MICHAEL THOMAS,

Defendants.


**DEFENDANTS' AMENDED COUNTERCLAIMS**


Defendants Kristin Antoinette Howard and Michael Thomas ("Defendants"), appearing

pro se, assert the following counterclaims against Plaintiffs. These include both

previously filed claims and new claims based on facts discovered after the filing of

Plaintiffs' Initial Disclosures.

## I. ORIGINAL COUNTERCLAIMS (REASSERTED AND EXPANDED)

### COUNT I: Defamation

Plaintiffs knowingly and maliciously published false and defamatory statements about Defendants to third parties, including the Better Business Bureau (BBB), members of the public, and potentially to prospective business contacts. These statements falsely accused Defendant Kristin Howard of criminal misconduct, dishonesty, and unethical behavior — allegations made without factual support and with the clear intent to damage the personal and professional reputations of both Defendants.

On March 28, 2025, Plaintiffs' counsel, Frank Reino, submitted a formal written response to the BBB complaint filed by Kristin Howard, in which he falsely accused her of assault, fraud, and dishonesty. (See Exhibit B – BBB Response Letter; Exhibit J – Frank Reino's BBB Letter.) These statements were not only factually inaccurate but were also published in a context designed to influence public perception and suppress protected consumer speech.

Plaintiffs escalated this defamatory conduct by responding publicly to 1-star Google reviews — including those written by both Kristin Howard and Michael Thomas — and falsely stated that the Defendants had assaulted another gym member. In truth, it was Kristin Howard who was physically assaulted by another SPENGA member on December 27, 2024 — a fact that Plaintiffs were fully aware of. Rather than remove or correct the false narrative, SPENGA continued to exploit the situation and use it against Mrs. Howard. Notably, the gym member who assaulted Mrs. Howard was either asked to

leave or left voluntarily, while Mrs. Howard completed her workout. This fact is corroborated by a public Instagram post from SPENGA Frisco taken immediately after the incident and by recorded performance data from that day. (See Exhibit C – Instagram Photo; Exhibit D – Spin Statistics.)

These statements constitute defamation per se under Texas law, as they falsely impute criminal conduct, moral turpitude, and unfitness in both a professional and personal capacity. The defamatory statements were published with actual malice, given Plaintiffs' knowledge of their falsity and the context in which they were made. The conduct was intended not to resolve any actual dispute, but to inflict reputational harm, emotional distress, and economic damage on the Defendants.

As a direct and proximate result of these defamatory publications, Defendants have suffered substantial reputational injury, loss of standing in the community, professional setbacks, emotional distress, and exacerbation of pre-existing disabilities. Plaintiffs are liable for all resulting damages, and Defendants seek compensatory, punitive, and equitable relief as appropriate under Texas law.

**COUNT II: Intentional Infliction of Emotional Distress**

Plaintiffs have engaged in a sustained and targeted pattern of conduct so extreme and outrageous as to exceed all bounds of decency tolerated in a civilized society. This conduct includes the publication of knowingly false and defamatory accusations in formal responses to the Better Business Bureau, the initiation and continuation of meritless litigation intended to intimidate, discredit, and silence Defendants, and the

unauthorized surveillance of private, unadvertised livestream content for use as litigation leverage. (See Exhibit E – Incident Details; Exhibit G – Kristin's Counseling Letter; Exhibit H – Michael's Counseling Letter.)

Plaintiffs also acted in concert with third parties, including at least one individual — Megan Smith — who admitted on social media to physically assaulting Defendant Kristin Howard. (See Exhibit F – Facebook Admission by Megan Smith.) Despite this admission, Plaintiffs never condemned the behavior and instead incorporated the false narrative surrounding the event into their broader defamatory responses, both online and in litigation filings.

This conduct was undertaken intentionally and with full knowledge of the Defendants' emotional and psychological vulnerabilities, particularly their documented disabilities. At a minimum, Plaintiffs acted with reckless disregard for the high probability that their behavior would cause lasting emotional harm. The cumulative effect of Plaintiffs' actions — including public defamation, pre-litigation surveillance, abusive court filings, and hostile communications — has resulted in severe mental anguish, persistent anxiety, sleep disruption, reputational harm, and a diminished quality of life for both Defendants.

Under Texas law, such conduct constitutes intentional infliction of emotional distress. Defendants are entitled to compensatory damages for the emotional and psychological injuries sustained, and to any further relief the Court deems just.

**COUNT III: Tortious Interference with Prospective Economic Advantage**

Plaintiffs knowingly and maliciously interfered with Defendant Kristin Howard's ongoing employment and future professional advancement by engaging in a sustained pattern of harassment, public defamation, and retaliatory litigation tactics. This campaign was not incidental — it was deliberately designed to damage Mrs. Howard's credibility, emotional stability, and professional standing. Plaintiffs acted with full knowledge of her employment status and her mental health vulnerabilities, and with the intent to provoke destabilization at a critical moment in her career.

Following the events of December 27, 2024, and the coordinated retaliatory actions that ensued — including false public accusations, abusive litigation, and threats of surveillance and spoilation — Defendant Howard was forced to remain on short-term disability leave longer than originally planned. The emotional and psychological toll caused by Plaintiffs' conduct materially impacted her ability to return to work in a timely manner.

As a direct result of this extended leave and the continued distress inflicted by Plaintiffs and their counsel, Mrs. Howard experienced the following professional setbacks:

- A loss of approximately 33.3% of her income over several months;

- Missed eligibility for merit-based raises and internal performance awards;

- Removal from consideration for promotions, leadership roles, and professional development projects for which she was otherwise qualified.

Plaintiffs were aware of her employment context and acted with clear intent to interfere with her career path. Their conduct was without legal justification, exceeded the bounds of legitimate litigation, and directly caused substantial economic harm and loss of opportunity to Defendant Kristin Howard. This conduct satisfies the elements of tortious interference with prospective economic advantage under Texas law.

(While supporting documentation of lost income — such as HR correspondence, short-term disability records, and financial statements — may be produced during discovery, no such exhibits are attached at this time. Count III is asserted based on the documented timeline, continuing harassment, and the medically supported prolonged leave that followed.)

**COUNT IV: Abuse of Process**

Plaintiffs have willfully and improperly used the legal process for purposes other than obtaining legitimate judicial relief, constituting abuse of process under Texas law. Although styled as a civil complaint, Plaintiffs' claims have been used as a vehicle to punish and silence Defendants for exercising their lawful rights—particularly their rights to free speech, petition, and public participation in consumer protection channels. The timing and content of Plaintiffs' allegations strongly indicate that the lawsuit was filed with an ulterior motive: to retaliate against Defendants for negative public reviews, a

Better Business Bureau (BBB) complaint, and other constitutionally protected expressions.

Rather than allow the BBB complaint process to unfold, Plaintiffs responded with a formal litigation filing that included defamatory and inflammatory allegations—mirroring the very content of their BBB response letter. (See Exhibit J – BBB Letter used to support litigation.) This letter falsely accused Defendant Kristin Howard of criminal conduct and dishonesty, and was later echoed in the pleadings themselves. Plaintiffs' conduct demonstrates a deliberate attempt to transform civil procedure into a tool of personal vengeance, reputational destruction, and emotional harassment.

The elements of abuse of process are satisfied: (1) an ulterior purpose—retaliation and silencing speech—and (2) the use of legal process in a manner inconsistent with its proper function, including to harass, defame, and intimidate Defendants through the court system. Plaintiffs' actions have caused substantial emotional distress, reputational harm, and economic disruption to both Defendants. The misuse of judicial mechanisms for such purposes constitutes a textbook example of abuse of process, for which Defendants are entitled to relief.

**COUNT V: Civil Conspiracy**

Plaintiffs, acting individually and jointly, engaged in a civil conspiracy to defame, harass, surveil, and retaliate against Defendants. This coordinated campaign extended beyond the named parties and likely included third-party actors, including but not limited to, Megan Smith, who publicly admitted to assaulting Defendant Kristin Howard and whose conduct

was never disavowed by Plaintiffs. (See Exhibit F – Megan Smith's admission of involvement.), Sandi Enloe, Anya Enloe, and Preston Enloe. Plaintiffs not only failed to condemn this conduct but appeared to incorporate it into their broader retaliatory strategy, referencing the incident in subsequent public statements and filings to discredit and intimidate Defendants.

In addition to the physical and reputational attacks, Plaintiffs' counsel, Frank Reino, has admitted to having knowledge of and access to a private, unannounced Twitch livestream conducted by Kristin Howard on February 26, 2025—prior to the filing or service of this lawsuit. (See Exhibit K – Frank Reino's email acknowledging pre-litigation surveillance.) This admission strongly supports the existence of a coordinated effort to monitor and collect private information on Defendants in anticipation of litigation, or for the purpose of intimidation and emotional destabilization. The surveillance occurred without lawful justification, without consent, and without transparency.

The above acts show clear evidence of a "meeting of the minds" among Plaintiffs and others to engage in a shared plan to achieve unlawful objectives—namely, the suppression of protected speech, the intentional infliction of emotional harm, reputational damage, and the violation of privacy rights—through unlawful means, including defamation, harassment, and unauthorized surveillance. This conspiracy has caused substantial harm to Defendants' reputations, emotional well-being, financial standing, and professional opportunities. Plaintiffs' coordinated and continuous misconduct gives rise to liability for civil conspiracy under Texas law.

**COUNT VI: Retaliation in Violation of the ADA**

Defendants Kristin Howard and Michael Thomas are qualified individuals with disabilities as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. Plaintiffs were fully aware of these disabilities due to prior interactions, formal disclosures, and direct communication. Despite this knowledge, Plaintiffs knowingly engaged in a pattern of conduct designed to harass, provoke, and emotionally destabilize both Defendants after they began asserting their rights and raising legitimate grievances related to their treatment and experiences with SPENGA Frisco.

This retaliatory conduct included initiating litigation based on false and exaggerated claims; publishing defamatory responses to public consumer complaints; attempting to suppress and discredit Defendants' protected speech; and accessing or surveilling private livestream content without notice or consent, including a Twitch broadcast that occurred before this litigation was even filed. (See Exhibit K – Frank Reino's email confirming access to private stream.) The hostile and aggressive nature of Plaintiffs' behavior, combined with the timing of their responses and legal actions, supports the inference that Defendants were targeted for asserting rights protected under the ADA and related state and federal protections.

As a direct result of this ongoing retaliation, both Defendants experienced a significant worsening of their existing mental health conditions. Additionally, Defendant Kristin Howard was diagnosed with a new, permanent, and life-altering condition that will

require long-term treatment and materially affects major life activities. These harms are not speculative — four separate licensed medical professionals are prepared to testify to the emotional, psychological, and physical consequences Defendants have endured as a direct result of Plaintiffs' conduct. (See Exhibit G – Kristin's Counseling Letter; Exhibit H – Michael's Counseling Letter.)

Plaintiffs' behavior constitutes unlawful retaliation under 42 U.S.C. § 12203. Defendants seek all remedies available under the ADA, including compensatory damages, injunctive relief to prevent further retaliation, and any additional equitable or statutory relief the Court deems just and proper.

**COUNT VII: Violation of the Texas Citizens Participation Act (TCPA)**

Plaintiffs have pursued this litigation, at least in part, as a strategic lawsuit against public participation (SLAPP), in violation of the Texas Citizens Participation Act (TCPA), Texas Civ. Prac. & Rem. Code § 27.001 et seq. Defendants exercised their protected rights to free speech and petition by posting truthful and negative reviews regarding their experiences at SPENGA Frisco, including 1-star Google reviews by both Kristin Howard and Michael Thomas. Additionally, a Yelp review posted by Michael Thomas was suppressed, either by improper flagging or external pressure, shortly after being published. Rather than responding substantively or correcting the underlying issues, Plaintiffs responded by initiating a lawsuit with claims including defamation and trademark violations, none of which are grounded in fact, and all of which appear

designed to silence, punish, and intimidate Defendants for speaking out on matters of public concern.

This retaliatory use of litigation is further evidenced by Plaintiffs' public responses to the Google reviews, in which they falsely accused Kristin Howard of assaulting another gym member—a statement that was both defamatory and clearly intended to discredit her review in the eyes of the public. Plaintiffs then escalated the retaliation by submitting a formal response to the Better Business Bureau that repeated these falsehoods and added further baseless accusations of dishonesty and professional misconduct. (See Exhibit J – BBB letter used to chill protected speech.)

These actions fall squarely within the definition of a SLAPP suit under the TCPA. Defendants' reviews, complaints, and statements relate to the operation of a public-facing business and are protected expressions of consumer opinion. Plaintiffs' pattern of retaliation—public defamation, litigation threats, and suppression of online speech—demonstrates the intent to burden, silence, and chill Defendants' constitutional rights through legal intimidation.

**COUNT VIII: Invasion of Privacy and Breach of Confidentiality**

Plaintiffs engaged in a pattern of conduct that violated Defendants' reasonable expectations of privacy and the confidentiality inherent in their prior business relationship. Specifically, Plaintiffs publicly disclosed private and sensitive information about Defendant Kristin Howard through online responses to third-party reviews, including references to internal gym incidents, personal conduct, and health-related

matters that were never intended for public dissemination. (See Exhibit B – Online disclosures of private data.) Additionally, Plaintiffs published or circulated a photograph of Mrs. Howard taken at SPENGA Frisco without her consent, further contributing to her identification and exposure. (See Exhibit C – Instagram photo.) Plaintiffs also revealed performance data, including spin statistics and workout information, that are personal in nature and not typically shared publicly without consent. (See Exhibit D – Spin stats.)

Beyond these disclosures, Plaintiffs and their counsel accessed and retained a private Twitch livestream conducted by Mrs. Howard on February 26, 2025, prior to the filing of this lawsuit. The stream was not publicly promoted and was accessible only to a limited group of followers. Plaintiffs have failed to disclose how the stream was located, accessed, or preserved — suggesting misuse of confidential client data or unauthorized surveillance. (See Exhibit K – Surveillance admission email.) The cumulative effect of these actions constitutes both an invasion of privacy and a breach of implied confidentiality. Defendants reasonably believed their private information would not be weaponized or publicized by former business affiliates. Plaintiffs' conduct caused Defendants to suffer emotional distress, reputational harm, and ongoing concern about further misuse of their personal data.

## II. SUPPLEMENTAL COUNTERCLAIMS BASED ON NEWLY DISCOVERED EVIDENCE

### COUNT IX: Invasion of Privacy – Intrusion Upon Seclusion

Plaintiffs and/or their counsel committed an unlawful intrusion upon seclusion by obtaining and retaining a video recording of a semi-private Twitch livestream conducted by Defendant Kristin Howard on February 26, 2025 — prior to the filing or service of any lawsuit. This stream was not publicly advertised, not searchable through ordinary means, and was accessible only to pre-approved followers of Mrs. Howard's Twitch account. Plaintiffs have admitted through counsel that they accessed and retained this content, but have repeatedly failed to explain how it was located, intercepted, or preserved. Defendants assert that the only plausible means of acquiring this video would have involved unauthorized access to private data or monitoring of Mrs. Howard's personal online activity, which she reasonably believed to be confined to a limited and controlled audience. The conduct constitutes a deliberate and unjustified intrusion into Defendants' private digital space and personal affairs, without lawful basis or consent. As a result, Defendants have suffered significant emotional distress, reputational damage, and fear of further surveillance. Such conduct gives rise to liability under Texas common law for invasion of privacy by intrusion upon seclusion. (See Exhibit K – Access and recording of private stream.)

**COUNT X: Violation of Illinois Eavesdropping Law (720 ILCS 5/14-1 et seq.)**

Plaintiffs violated the Illinois Eavesdropping Act, 720 ILCS 5/14-1 et seq., by recording,

accessing, and later disclosing a private Twitch livestream conducted by Defendant

Kristin Howard on February 26, 2025, without obtaining her consent. The livestream was

not publicly advertised, was accessible only to authorized followers, and occurred at a

time when no litigation had been filed or served. Plaintiffs, who are based in Illinois and

act through Illinois corporate entities, have since referenced the video's existence in their

Initial Disclosures and attempted to use it as litigation evidence — without ever

explaining how it was obtained or what method was used to capture or preserve it. Under

Illinois law, all parties to a private electronic communication must consent to its

interception or recording. Defendant Howard had a reasonable expectation of privacy in

the context of an unannounced livestream viewed only by pre-approved followers, and

she never consented to any party monitoring, recording, or disclosing the stream.

Plaintiffs' conduct constitutes a clear violation of Illinois' all-party consent statute and

entitles Defendants to appropriate remedies under state law. (See Exhibit K – Access and

recording of private stream.)


**COUNT XI: Violation of Pennsylvania Wiretap Act (18 Pa. C.S. § 5701 et seq.)**

Plaintiffs and their counsel violated the Pennsylvania Wiretap Act, 18 Pa. C.S. § 5701 et

seq., by unlawfully intercepting and/or using the contents of a private electronic

communication — namely, a Twitch livestream broadcast by Defendant Kristin Howard

on February 26, 2025. The stream was unannounced, not publicly promoted, and

accessible only to followers or subscribers, and no consent was given by Mrs. Howard for

it to be monitored, recorded, or disclosed. Plaintiffs later referenced the existence of this video in their Initial Disclosures, indicating that it had been recorded and preserved without Defendants' knowledge or authorization. Plaintiffs' counsel, Frank Reino, who resides in or regularly practices from Pennsylvania, has admitted to having access to and knowledge of this stream. Pennsylvania is a two-party (all-party) consent state, meaning that any recording or interception of electronic communications without the consent of all participants is unlawful. No such consent was sought or obtained by Plaintiffs or their agents. The disclosure and use of this material in litigation violates Pennsylvania law and supports liability under the Wiretap Act. (See Exhibit K – Access and recording of private stream.)

## COUNT XII: Breach of Implied Confidentiality and Misuse of Customer Information

Plaintiffs breached an implied duty of confidentiality by using private customer information obtained through a prior business relationship with Defendant Kristin Howard to locate and access a Twitch livestream that was not publicly identified, advertised, or searchable by ordinary means. At no point did Mrs. Howard provide Plaintiffs with her Twitch username or any information suggesting she would be streaming on February 26, 2025. The only plausible way for Plaintiffs to have identified, located, and monitored this stream — which was unannounced and limited to approved followers — was through the use of confidential customer data previously entrusted to them for business purposes. This misuse of information exceeds the bounds of legitimate litigation preparation and constitutes a breach of trust, a violation of consumer data

expectations, and potentially, privacy laws. Rather than disclose how this stream was obtained or provide a lawful basis for its recording and retention, Plaintiffs have remained evasive and hostile in response to repeated inquiries. The exploitation of private information given in confidence for non-litigation purposes represents a knowing misuse of that information in violation of principles of implied confidentiality, fair dealing, and privacy rights. (See Exhibit K – Access and recording of private stream.)

**COUNT XIII: Gross Negligence**

Plaintiffs and their agents acted with gross negligence by failing to exercise even minimal care in handling Defendants' private information and personal digital content. Plaintiffs accessed, retained, and referenced a private, unadvertised Twitch livestream that was conducted by Defendant Kristin Howard on February 26, 2025 — prior to the initiation of this lawsuit. Plaintiffs had no legitimate means of discovering or accessing this stream unless confidential customer data, obtained during a prior business relationship, was used to locate Mrs. Howard's Twitch profile and monitor her real-time activity without notice or consent. Plaintiffs then failed to disclose this video in a timely manner and instead weaponized it after the fact, raising serious questions about preservation, authentication, and ethical obligations under Rule 26. These actions — involving unconsented surveillance, retention, and use of a pre-litigation video stream — reflect more than ordinary negligence. They demonstrate a conscious disregard for Defendants' privacy rights, legal safeguards, and the rules of discovery. Plaintiffs' conduct was so egregious that it constitutes gross negligence under Texas law. (See Exhibit K – Failure to prevent and improper use of private content.)

**COUNT XIV: Aiding and Abetting**

Plaintiffs' campaign of misconduct was not carried out in isolation. At least two key

figures — Megan Smith, a known associate of SPENGA Frisco, and Plaintiffs' counsel

Frank Reino — actively enabled and participated in the wrongful acts described

throughout these counterclaims. Megan Smith physically assaulted Defendant Kristin

Howard on December 27, 2024, an incident she later admitted to publicly on social

media. (See Exhibit F – Megan Smith's Facebook Admission.) Rather than disavow or

discipline this individual, Plaintiffs implicitly supported her conduct by continuing to

engage with her online, referencing the incident publicly, and using it to frame a false

narrative of events in later public-facing statements. Further, Plaintiffs' counsel Frank

Reino admitted via email on May 27, 2025, that he had access to a private Twitch

livestream broadcast by Kristin Howard — despite the fact that it was never announced,

was limited to subscribers, and occurred before Plaintiffs even filed this lawsuit. His

explanation offered no legitimate basis for accessing or preserving such a stream and

instead implicated multiple state and federal wiretap violations. (See Exhibit K –

Counsel's enabling of surveillance.) Plaintiffs, through their silence and continued

reliance on the conduct of these third parties, knowingly aided and abetted these tortious

and unlawful acts.


**COUNT XV: Civil Harassment**

Plaintiffs have engaged in a sustained and escalating campaign of harassment against

Defendants, both prior to and during the course of this litigation. This campaign has

included defamatory public statements, coordinated retaliation, unauthorized

surveillance, and the misuse of personal and professional information. Plaintiffs and their agents have repeatedly published misleading and damaging information online, including false claims that Kristin Howard assaulted a gym member, while in fact she was the victim of an assault. Plaintiffs also acquired and referenced a private Twitch livestream, conducted by Mrs. Howard on February 26, 2025, which they had no lawful right to access or use. The fact that this surveillance occurred before any legal action was initiated demonstrates a deliberate effort to track, monitor, and intimidate Defendants for asserting their rights. Additionally, threats of spoilation, refusal to disclose how the surveillance was conducted, and an overall pattern of hostile communications further support this claim. These actions have had a profound emotional and psychological impact on both Defendants, as supported by professional mental health documentation. (See Exhibit G – Kristin's Counseling Letter; Exhibit H – Michael's Counseling Letter; Exhibit K – Ongoing threatening and surveillance behavior.) Plaintiffs' conduct constitutes civil harassment under Texas law and warrants appropriate relief.

### III. PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaimants Michael Thomas and Kristin Howard, proceeding pro se, respectfully request that the Court enter judgment in their favor and against Plaintiffs on all Counts of these Counterclaims, and award the following relief:

1. Compensatory damages in an amount to be determined at trial, but not less than $3,500,000, for economic losses, reputational harm, emotional distress, loss of professional opportunity, and other damages proximately caused by Plaintiffs' unlawful conduct;

2. Punitive damages in an amount sufficient to punish Plaintiffs for their willful, malicious, and outrageous actions, and to deter similar conduct in the future;

3. Statutory damages, penalties, and remedies as provided by applicable federal and state law, including but not limited to 42 U.S.C. § 12203 (ADA retaliation), the Texas Citizens Participation Act (TCPA), and relevant privacy and wiretap statutes;

4. Injunctive relief, including but not limited to an order:

    a. Prohibiting Plaintiffs and their agents from further defamation, harassment, or retaliation;

    b. Enjoining Plaintiffs from conducting or directing any form of surveillance of Defendants' personal or digital activities;

      c.  Requiring Plaintiffs to cease and desist from using or disclosing any

           private, confidential, or unlawfully obtained information belonging to

           Defendants;

5.  Declaratory relief affirming:

      a.  That Defendants' statements and consumer complaints constitute

           protected speech under the U.S. and Texas Constitutions;

      b.  That Plaintiffs' conduct violated the Defendants' statutory and

           constitutional rights;

6.  Pre-judgment and post-judgment interest as permitted by law;

7.  Costs of suit, including reasonable attorneys' fees and expert witness fees to the

    extent permitted by statute or equity, including under the ADA and TCPA;

8.  Such other and further relief—legal, equitable, or declaratory—as the Court

    deems just and proper in light of the facts, evidence, and equities of this case.

## IV. RELIEF SOUGHT BY SEPARATE MOTION

Defendants seek appropriate relief as detailed in their concurrently filed Motion to

Dismiss Plaintiffs' Complaint.

Respectfully submitted,

Kristin Howard

Pro Se Defendant

Michael Thomas

Pro Se Defendant

Date: May 21, 2025