IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SPENGA INC., ET AL., § § Plaintiffs, § § v. § § KRISTIN ANTOINETTE HOWARD, ET § AL., § § Defendants. § | CIVIL ACTION NO. 4:25-CV-00251-SDJ-AGD |

# ORDER

Pending before the court is Non-Party John Doe's Motion to Quash Subpoena to Domains By Proxy, LLC (Dkt. #78) ("John Doe Motion") and Defendants' Motion to Enforce Mediation Agreement, Compel Disclosure of Subpoena, and Stay Third Party Compliance Pending Resolution of Sealed Non-Party Motion (Dkt. #80) ("Defendants' Motion").

## I. BACKGROUND

### A. *Factual Background*

On March 12, 2025, Plaintiff Spenga Inc. and Plaintiff Spenga Holdings, LLC ("Plaintiffs") filed trademark and business defamation claims against Defendants Kristin Antoinette Howard ("Defendant Howard") and Michael Thomas ("Defendant Thomas"). Plaintiffs also filed an Anticybersquatting Consumer Protection claim against Defendant Howard. Plaintiffs complain that Defendant Howard registered and used www.spengafrisco.com/ ("the domain name") for the purpose of selling it to Plaintiffs, in violation of the Anticybersquatting Consumer Protection Act (Dkt. #1, at p. 9). Additionally, Plaintiffs allege that Defendants impermissibly

used Plaintiffs' registered trademarks in connection with the domain name (Dkt. #1, at pp. 9-10).[1]

On August 4, 2025, the parties engaged in a Settlement Conference ("mediation") per the court's order (Dkt. #68). After mediation, the mediator, United States Magistrate Judge Christine L. Stetson, entered a Mediator's Report (Dkt. #76) ("Report"). The Report detailed the parties had "agreed that Plaintiff would issue the subpoena [to Domains By Proxy, LLC] and that Defendants would not oppose such a subpoena" (Dkt. #76, at p. 1). Though Plaintiffs and Defendants disagree about the scope of this subpoena, they both recognize that at a minimum the subpoena to Domains By Proxy, LLC ("DBP") seeks to establish ownership over the domain name (Dkt. #80, at p. 3; Dkt. #81, at p. 2).

### B. Procedural Background

Plaintiffs issued a subpoena to DBP. At issue are the nine categories of documents to be produced:

> 1. All records and documents related to the use of your service(s) to register, create, maintain and/or use the Infringing Domain.
> 2. All records and documents sufficient to identify all names, address, and telephone numbers associated with the registration of the Infringing Domain.
> 3. All communication between you and the owner or operator of the Infringing Domain.
> 4. All payment records, invoices and transactions related to the Infringing Domain.
> 5. All account information tied to the Infringing Domain.
> 6. All IP addresses used to access the account of the Infringing Domain.
> 7. Names and contact information for all administrative, technical, and billing contacts related to the Infringing Domain.
> 8. DNS server and change history.
> 9. Any complaints, takedown requests, or legal correspondence involving the Infringing Domain.

(Dkt. #81-1, at p. 7). On August 14, 2025, John Doe filed his Motion (Dkt. #78). Within the Motion, John Doe moves to quash the subpoena issued by Plaintiffs to DBP (Dkt. #78). John Doe

---

[1] According to the Complaint, Plaintiff Spenga Inc. "is the owner of various federally registered trademarks, including but not limited to: Nos. 4,833,071; 4,833,069 and 4,997,395 for SPENGA (the "Registered Marks") in connection with health club services, fitness equipment, and several other goods" (Dkt. #1, at p. 2, ¶ 6).

2

asserts that he received notice of the subpoena from DBP and, due to his status as an "anonymous speaker and domain registrant," he opposes the subpoena (Dkt. #78, at p. 2). He argues that the subpoena as issued violates Federal Rule of Civil Procedure ("FRCP") 45 and his First Amendment Rights to "anonymous speech online" (Dkt. #78, at p. 3). John Doe asserts the subpoena must be quashed under FRCP 45(d)(3) because it is too broad and not narrowly tailored (Dkt. #78, at p. 3). Additionally, John Doe argues that Plaintiffs violated FRCP 45(a)(4) by failing to file the subpoena on the public docket (Dkt. #78, at p. 5). Regarding John Doe's First Amendment Rights, he claims that in order to "unmask" anonymous speakers online, the court must find that Plaintiffs "demonstrate a strong factual basis for their claims and show that identification is essential" (Dkt. #78, at p. 4). Namely, John Doe argues that since the domain name at issue is not engaged in commercial activity, infringement, or misleading acts, Plaintiffs cannot access the identity of the domain owner (Dkt. #78, at p. 4). Finally, he asserts the "domain's content does not justify disclosure" (Dkt. #78, at p. 4).

Defendants filed their own Motion on August 19, 2025, also contesting the subpoena that was issued by Plaintiffs to DBP (Dkt. #80). Specifically, Defendants ask the court to enforce the subpoena as the parties agreed at mediation, compel Plaintiffs to file the subpoena on the "public docket," and stay third-party compliance with the subpoena pending resolution of "any related objection or non-party sealed motion" (Dkt. #80, at p. 1). Defendants claim that the subpoena they agreed to at mediation was limited to identifying the "current owner of record," and did not encompass "financial records, billing or credit card data, IP logs, historical content, or other intrusive data" (Dkt. #80, at p. 3). Additionally, Defendants assert that Plaintiffs must file the subpoena at issue on the record and presume that Plaintiffs actually attempted to do so under seal in violation of Local Rule CV-5(a)(7)(A) (Dkt. #80, at p. 3). Finally, Defendants ask the court to

3

stay DBP's compliance with the subpoena until John Doe's Motion is resolved (Dkt. #80, at pp. 3-4). Defendants also address substantive arguments regarding Plaintiffs' underlying claims, but do not ask for any relief specifically addressing those issues (Dkt. #80, at p. 4).

In response to both Motions, on August 22, 2025, Plaintiffs filed an Opposition to Non-Party John Doe's Motion to Quash and Defendants' Motion to Enforce Mediation Agreement, Compel Disclosure of Subpoena, and Stay Third-Party Compliance Pending Resolution of Sealed Non-Party Motion (Dkt. #81) ("Response"). Regarding John Doe's First Amendment argument, Plaintiffs explain that the First Amendment does not protect speech that violates the Cybersquatting Statute, infringing speech, or misleading commercial speech (Dkt. #81, at p. 4). Additionally, Plaintiffs argue that the subpoena is not overbroad but rather seeks the "information necessary to identify the registrant and/or owner of" the domain name through "communications, name[s], address, billing information, IP logs, and domain history" (Dkt. #81, at p. 5). Plaintiffs claim that such information is "routinely provided" in like subpoenas and is needed to determine "control of the website" (Dkt. #81, at pp. 5-6). In fact, Plaintiffs assert that their need for this information is so great it outweighs the Defendants' (and John Doe's) potential burden in revealing the identity of the domain owner (Dkt. #81, p. 6). Plaintiffs also state that they are not required to file the subpoena on the record but elected to do so (Dkt. #81, at p. 6; Dkt. #81-1). In a footnote, Plaintiffs allege that Defendants are John Doe or wrote John Doe's Motion (Dkt. #81, at p. 1).

Defendants filed a Reply to Plaintiffs' Opposition to Non-Party John Doe's Motion to Quash and Defendants' Motion to Enforce Mediation Agreement, Compel Disclosure of Subpoena, and Stay Third Party Compliance Pending Resolution of Sealed Non-Party Motion (Dkt. #83) ("Reply") on August 25, 2025. Defendants' Reply focuses on the overbreadth of the subpoena and reiterates Defendants' desire to conform the subpoena to the "current owner of

4

record" (Dkt. #83, at p. 3). Defendants reassert that the subpoena, as issued, encompasses far more than they agreed to at mediation (Dkt. #83, at p. 3). They also claim that Plaintiffs concealed the subpoena and withheld it from the record until this court "compelled [its] disclosure" (Dkt. #83, p. 3). Defendants claim that the scope of the subpoena should be guided by the parties' mediation agreement rather than the Federal Rules of Civil Procedure (Dkt. #83, at p. 4). Defendants then make arguments about the merits of Plaintiffs' trademark and Anticybersquatting claims (Dkt. #83, at pp. 5-6). Defendants also address Plaintiffs' allegations that Defendants are John Doe or wrote John Doe's Motion, which they categorically deny (Dkt. 83, p. 6-7).

Finally, on September 2, 2025, Plaintiffs filed a Sur-Reply in Opposition to Defendants' Reply to Plaintiffs' Opposition to Non-Party John Doe's Motion to Quash and Defendants' Motion to Enforce Mediation Agreement, Compel Disclosure of Subpoena, and Stay Third-Party Compliance Pending Resolution of Sealed Non-Party Motion (Dkt. #85) ("Sur-Reply"). Plaintiffs' Sur-Reply reasserts that Plaintiffs were not required to file the subpoena they issued to DBP but did so on their own accord (Dkt. #85, at p. 2). Plaintiffs also argue that the subpoena is "narrowly and directly tailored" to acquire the "minimum" amount of information necessary to "identify the real actor(s) behind" the domain name (Dkt. #85, at p. 3). In addition, Plaintiffs explain that the reason they seek information beyond that of the "owner of record" is because the current owner may be a "proxy or an alias" (Dkt. #85, at p. 3). As such, obtaining additional information would "enable [a] positive identification, and tie control of the domain" to a specific party through their name, device, or payment method (Dkt. #85, at p. 3). Plaintiffs argue the requested information is what the parties previously agreed to at mediation because it is "the information necessary to find the real owner/operator of the" domain (Dkt. #85, at p. 3).

Plaintiffs' Sur-Reply also addresses Defendants' arguments concerning the merits of

Plaintiffs' trademark and cybersquatting claims, ultimately asserting that the claims are actionable (Dkt. #85, at pp. 3-4). Additionally, Plaintiffs claim that Defendants have no standing to quash or block the third-party subpoena because they have no "privilege or personal right" regarding DBP's "proxy and account records" (Dkt. #85, at p. 4). They claim that if DBP felt an undue burden or had a privilege/protection issue with the subpoena, then DBP would need to assert those claims under FRCP 45 itself (Dkt. #85, p. 4).

## II.     LEGAL STANDARD FOR STANDING

FRCP 45(d)(3) lists the circumstances under which a court must or may quash or modify a subpoena. FED. R. CIV. P. 45(d)(3). Notably, the Federal Rules of Civil Procedure require a court to quash or modify a subpoena when the subpoena necessitates the "disclosure of privileged or other protected matter, if no exception or waiver applies; or…subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iii)-(iv). To properly have standing to assert a claim of privilege or protection, a moving party generally must be "in possession of the materials subpoenaed and…allege[] any personal right or privilege with respect to the materials subpoenaed." *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); FED. R. CIV. P. 45(e)(2)(A). If a moving party is not in possession or control of the subpoenaed information, then that party must have a "personal right or privilege in the subject matter of the subpoena." *Richards v. Lufkin Inds., LLC*, No. 9:14-CV-136, 2016 WL 11650897, at *3 (E.D. Tex. Apr. 14, 2016). However, even if a party has standing to challenge a subpoena based on privacy or privilege, that party may not "challenge a non-party subpoena on the grounds that it unduly burdens the non-party." *Payne v. Forest River, Inc.*, No. 13-679-JWD-RLB, 2014 WL 7359059, at *5 (M.D. La. Dec. 23, 2014); *Providence Title Co. v. Truly Title, Inc.*, NO. 4:21-CV-147-SDJ, 2022 WL 17981500, at *3 (E.D. Tex. Sept. 29, 2022).

6

### A. *John Doe's Standing*

John Doe moves to quash the subpoena to DBP, quoting FRCP 45's language that requires a court to quash or modify a subpoena when the subpoena seeks the disclosure of privileged/protected matters or poses an undue burden (Dkt. #78, at p. 3). As the moving party, John Doe bears the burden of establishing the subpoena is subject to privilege/protection and/or is unduly burdensome. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). John Doe states that he was not served with the subpoena; rather, he simply received a courtesy copy from DBP (Dkt. #78, at p. 2). John Doe fails to contend that he possesses the information sought in the subpoena, so John Doe must claim a "personal right or privilege in the subject matter of the subpoena" to quash it on the ground of privilege or protection. *See Richards*, 2016 WL 11650897, at *3. John Doe describes himself as an "anonymous speaker and domain registrant," but he does not clearly explain that he owns or controls the domain about which the subpoena requests information (Dkt. #78, at p. 2). He asserts he has a "well-established First Amendment interest in preserving anonymity, particularly when speech is non-commercial and critical of public-facing entities," but fails to clarify whether this is because he in fact owns or controls the domain name at issue (Dkt. #78, at p. 2). Thus, it is unclear to the court whether John Doe has "any ***personal*** right or privilege with respect to the materials subpoenaed." *Brown*, 595 F.2d at 967 (emphasis added). Accordingly, John Doe does not have standing to assert a claim of privilege or protection to quash the subpoena.

Likewise, John Doe does not have standing to assert that the subpoena should be quashed because it is too burdensome (Dkt. #78, at p. 3). John Doe does not identify as DBP, or any other party that is expected to comply with the subpoena (Dkt. #78, at p. 2-3). Instead, John Doe attempts to claim that the subpoena issued to DBP, a non-party, is too burdensome (*See* Dkt. #78, at p. 3).

John Doe would not need to comply with the subpoena as issued, and because of this he would not incur any potential burden in complying with it. Accordingly, John Doe does not have standing to move to quash the subpoena on the ground that it is unduly burdensome. *See Payne*, 2014 WL 7359059 at *5; *Providence Title Co.*, 2022 WL 17981500 at *3.

### B.  *Defendants' Standing*

Plaintiffs assert in their Sur-Reply that Defendants lack standing "to quash or pare back a third-party subpoena" (Dkt. #85, at p. 4). Though Defendants do not move to quash the subpoena, they do clearly move to modify it–namely to the subpoena they believe "was agreed upon in mediation…" (Dkt. #83, at p. 2). As detailed above, FRCP 45 specifically lists the bases to modify a subpoena. However, Defendants' Motion and Reply fail to cite a legal basis to limit the subpoena (*See* Dkt. #80; Dkt. #83). At most, Defendants state the subpoena to DBP is not narrow (*See* Dkt. #83, at p. 2). This is not a claim of privilege or protection but may be construed as an assertion that the subpoena is too burdensome. As explained above though, a moving party does not have standing to "challenge a non-party subpoena on the grounds that it unduly burdens the non-party." *Payne*, 2014 WL 7359059 at *5; *Providence Title Co.*, 2022 WL 17981500, at *3. As such, Defendants do not have standing to move the court to modify the subpoena on the grounds that it is unduly burdensome on DBP.

### III.  JOHN DOE'S MOTION TO QUASH

Even if John Doe had standing to quash the subpoena, he fails to prove that the subpoena "requires disclosure of privileged or other protected matter…or…subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iii)-(iv).

### A. *Privileged or Other Protected Matter*

John Doe does not point the court to any "privileged" material but argues the subpoena

8

"endangers First Amendment-Protected Anonymous Speech" (Dkt. #78, at p. 4). The court construes this assertion as John Doe's argument that the subpoena requires the disclosure of protected First Amendment speech. John Doe argues the court should quash the subpoena because it seeks to unmask "anonymous criticism," which courts regularly protect by rejecting such attempts "unless plaintiffs demonstrate a strong factual basis for their claims and show that identification is essential"[2] (Dkt. #78, at p. 4). He further explains that the speech at issue "does not advertise goods or services, does not display any SPENGA trademarks or logos, and includes clear disclaimers. The content is limited to commentary or criticism that is non-commercial in nature" (Dkt. #78, at p. 2). Plaintiffs respond that the First Amendment "does not protect infringing or misleading commercial speech, nor does it protect a clear violation of the Cybersquatting Statute" (Dkt. #81, at p. 4). Plaintiffs argue that courts unmask anonymous online users upon a "balance of the speaker's claimed right to anonymity against the plaintiff's need to identify the wrongdoer" (Dkt. #81, at p. 4).

"The Supreme Court has recognized that the First Amendment protects anonymous speech and that this protection extends to the Internet" *Ent. v. Does 1 - 1,427*, No. 2:11-CV-269, 2012 WL 12897376, at *2 (E.D. Tex. Mar. 16, 2012). However, there are limitations to such speech. Importantly, parties cannot "encroach upon the intellectual property rights of others." *Id*. When determining whether to "unmask" an anonymous internet user through a subpoena, courts engage in a balancing test that weighs the "need for disclosure against the…First Amendment interests." *Id*; *Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash: B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB*, No. 4:12–cv–00963, 2012 WL 4387420 at *1 (S.D. Tex. Sept. 22, 2012) (citations omitted). The balancing test examines five factors:

(1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of

---

[2] John Doe did not point the court to any case law supporting this contention.

9

    the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy.

*Ent. v. Does 1 - 1,427*, 2012 WL 12897376 at *2.

### 1. Plaintiffs have made a concrete showing of a prima facie claim of actionable harm

Defendants contest the validity of Plaintiffs' claims. John Doe asserts the "domain's content does not justify disclosure" because it does not contain infringing or misleading content, nor does it relate to commercial use (Dkt. #78, at p. 4). However, in deciding this factor, the court need only determine if Plaintiffs have made a prima facie showing of their claims. Having reviewed Plaintiffs' Complaint, the court finds that Plaintiffs have established a prima facie claim for 1) Defendant Howard's Violation of the Anticybersquatting Consumer Protection Act; 2) Defendants' trademark dilution; 3) Defendants' trademark defamation; and 4) Defendants' business defamation (Dkt. #1). *See* 15 U.S.C. § 1125 (d)(1)(A), (c), (a); *Accresa Health LLC v. Hint Health Inc.*, No. 4:18-cv-00536, 2020 WL 4644459, at *44 (E.D. Tex. Mar. 19, 2020). In the Complaint, Plaintiffs allege that they own the "federally registered trademarks, including but not limited to: Nos. 4,833,071; 4,833,069 and 4,997,395 for SPENGA," which were considered famous at the time of the domain's creation (Dkt. #1). Additionally, Plaintiffs assert that Defendant Howard owns the domain name and together with Defendant Thomas, they used Plaintiffs' registered trademarks to defame Plaintiffs' business and their trademarks, through the domain name and other avenues, which ultimately diluted Plaintiffs' trademarks (Dkt. #1).[3]

### 2. Plaintiffs made a specific discovery request

Plaintiffs claim their subpoena to DBP seeks to identify who controls and owns the domain

---

[3] The court makes no comment on the viability of the claims at issue but rather finds that a prima facie showing has been made for the asserted claims.

name (Dkt. #81, at p. 6). This information is at the core of Plaintiffs' claims. The subpoena specifically seeks records related to the "creation, maintenance, and/or use of the domain," the "names, address, and telephone numbers associated with the registration" of the domain name, "communications between" DBP and the owner of the domain, "payment records, invoices and transactions" regarding the domain name, "all account information" related to the domain name, "all IP addresses used to access the" domain, the "names and contact information for all administrative, technical, and billing contracts related" to the domain name, "DNS server and charge history," and "any complaints, takedown requests, or legal correspondence involving the" domain (Dkt. #81-1, at p. 7). These are all sufficiently specific to uncover the identity of the party who created the domain and who initially infringed on Plaintiffs' trademarks and engaged in cybersquatting, as well as any party who may continue to do so. *See Ent.*, 2012 WL 12897376, at *2.

### 3. Plaintiffs have no alternative means to obtain the subpoenaed information

Due to the anonymous nature of the domain name owner, subpoenaing this information from DBP is the only method that could ascertain who is allegedly cybersquatting, defaming Plaintiffs' trademarks and business, and infringing upon Plaintiffs' trademarks.

### 4. A central need for the subpoenaed information to advance the claim

All of Plaintiffs' claims involve an allegation related to the domain name. This includes the actual creation and use of the domain name, the use of registered trademarks on the domain, and potentially defaming statements made on the domain. The owner and/or controller of the domain name may face liability for their creation of the domain name, their publication of the trademarks on the domain, as well as any defaming statements made on the domain. Without ascertaining the owner of the domain, both from the present and past, Plaintiffs are unable to

11

properly litigate the case. Plaintiffs claim that part of the reason they are seeking this subpoena is to "confirm [the] identity" of the Defendants (Dkt. #81, at p. 5). This information will advance the lawsuit by either furthering it through the confirmation of Defendants' identity or potentially ending it through the failure to connect Defendants to the domain name.

### 5. The party's expectation of privacy

"[I]nternet subscribers do not have an expectation of privacy in their subscriber information as they already have conveyed such information to their Internet Service Providers." *Strike 3 Holdings, LLC v. Doe, et al.*, No. 4:21-CV-243-SDJ, 2021 WL 2258737, at *3 (E.D. Tex. June 3, 2021). In the case at hand, the domain registrant voluntarily conveyed personal and identifying information to DBP in order to create the domain; as such, this information should not carry an expectation of privacy.

Given the balance of the test set forth above, the court finds that the need for disclosure of the domain owner outweighs John Doe's claimed First Amendment interests. John Doe's Motion to quash the subpoena based on his assertion that the subpoena requires the disclosure of protected First Amendment speech is denied.

### A.    *Undue Burden*

John Doe also argues the subpoena should be quashed because it presents an "undue burden," namely it "is overbroad and not narrowly tailored" (Dkt. #78, at p. 3). *See* FED. R. CIV. P. 45(d)(3)(A) iv). The Fifth Circuit adopted the following six-factor balancing test to determine if a subpoena poses an undue burden: "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022).

Specifically, when dealing with subpoenas directed at non-parties, the court considers the cost of compliance imposed on third parties. *Id*.

### 1. The relevance of the information requested

John Doe argues the subpoena seeks "sweeping categories of information—including financial and residential data—without any temporal limitation or case-specific justification," such that the subpoena seeks "information far beyond any reasonable scope" (Dkt. #78, at pp. 2-3). Plaintiffs claim that the information sought is relevant, particularly because "[r]ecords related to the history of the ownership, the identity of the person paying for the Infringing Domain and records related to who is in control of the website (i.e. the IP address of the person making changes to it) are all necessary to determine who really owns and controls the Infringing Domain" (Dkt. #81, at p. 6).

The standard of relevance under this test mirrors FRCP 26(b)(1). *Leonard*, 38 F.4th at 489. Parties may obtain

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*See* FED. R. CIV. P. 26(b)(1). To further clarify, the Local Rules of this court illustrate what is "relevant to any party's claim or defense":

> (1) it includes information that would not support the disclosing parties' contentions; (2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties; (3) it is information that is likely to have an influence on or affect the outcome of a claim or defense; (4) it is information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and (5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

13

Local Rule CV-26(d)(1)-(5). "[C]ommunications, name, address, billing information, IP logs, and domain history" used to identify the "registrant and/or owner of the" domain name (Dkt. #81, p. 5) all bear on Plaintiffs' claims that deal with the domain and information/trademarks posted on it. Plaintiffs seek relevant information as defined by both the Federal Rules of Civil Procedure and the Local Rules of this court. Accordingly, the subpoena seeks relevant information.

### 2. The need of the party for the documents

John Doe does not address this in his Motion, but Plaintiffs assert in their Response that the requested information is "necessary to determine who really owns and controls the" domain name (Dkt. #81, p. 6). The court agrees. Accordingly, the Plaintiffs' need for the subpoenaed information is great.

### 3. The breadth of the document request

John Doe describes the subpoena as "overbroad" because it "is not narrowly tailored, lacks temporal constraints, and seeks information far beyond any reasonable scope…" (Dkt. #78, p. 3). He asserts that the subpoena poses an undue burden because it seeks such "expansive, intrusive data including billing details, IP logs, credit card information, and residential addresses" (Dkt. #78, at p. 1). Plaintiffs assert that "[t]hese categories are routinely provided in response to registrar subpoenas and are clearly within the scope of allowable and agreed upon discovery in this matter" (Dkt. #81, at p. 5). Subpoenas seeking revealing information about anonymous internet users have been found to be appropriately tailored when they sought "only the names and physical addresses" of the anonymous parties. *Strike 3 Holdings*, 2021 WL 2258737, at *3 (lead case); *Ensor v. Does 1-15*, No. A-19-CV-00625-LY, 2019 WL 4648486, at *4 (W.D. Tex. Sept. 23, 2019) ("the discovery sought from the website operators is narrowly tailored to the extent that it seeks the anonymous Internet user's name, physical address, and IP address."); *Combat Zone Corp. v. Does*

14

*1–5*, No. 3:12-cv-4005, 2012 WL 5289736, at *1 (N.D. Tex. Oct. 26, 2012) ("The information sought is specific…only the associated names, addresses, telephone numbers, email addresses, and [Media Access Control] addresses" were sought). Notably, some courts are willing to extend the scope of such discovery when the request relates to "other contact information." *See Ensor*, 2019 WL 4648486, at *4 (citing *Combat Zone Corp.*, 2012 WL 5289736 at *1).

The court recognizes Plaintiffs' fears that the domain registrant may have "switched the registrant to someone else in a fraudulent transfer designed to hide their ownership" (Dkt. #81, p. 6). Plaintiffs' claims relate to the initial creation/ownership of the domain name, as well as the current ownership and use of trademarks on the domain. Thus, records related to the "history of the [domain's ownership]" are relevant.

### 4. The time period covered by the request

Again, John Doe asserts that the subpoena is too burdensome because it "lacks temporal restraints…" (Dkt. #78, at p. 2). Once more, Plaintiffs argue that they seek historical records of ownership because of their belief that the domain registrant "switched the registrant to someone else in a fraudulent transfer designed to hide their ownership" (Dkt. #81, at p. 6). As stated above, the court finds this argument has merit considering that this registrant faces potential liability for their original ownership over the domain name. Additionally, though Plaintiffs are seeking the history of ownership, they allege that the domain only came into existence in early 2025 (*See* Dkt. #1, at p. 3). As such, the period of time covered by this request is brief, and, therefore, not unduly burdensome.

### 5. The particularity with which the party describes the requested documents

John Doe does not allege the subpoena fails to describe the requested information appropriately (*See* Dkt. #78). Plaintiffs' subpoena, as attached to their Response, specifically

15

instructs DBP to provide the following requested records related to https://spengafrisco.com/: namely those related to the "creation, maintenance, and/or use of the domain," the "names, address, and telephone numbers associated with the registration" of the domain name, "communications between" DBP and the owner of the domain, "payment records, invoices and transactions" regarding the domain name, "all account information" related to the domain name, "all IP addresses used to access the" domain, the "names and contact information for all administrative, technical, and billing contracts related" to the domain, "DNS server and charge history," and "any complaints, takedown requests, or legal correspondence involving the" domain (Dkt. #81-1, at p. 7). The court finds that Plaintiffs sufficiently described the requested documents with particularity.

### 6. The burden imposed

John Doe claims that the subpoena "impose[s] an undue burden on a non-party" because of its breadth (Dkt. #78, at p. 3). In fact, he claims it is so broad that it "threatens disproportionate harm to Doe" (Dkt. #78, at p. 3). Plaintiffs' Response indicates that "the subpoena seeks only information necessary to identify the registrant and/or owner of the Infringing Domain" (Dkt. #81, at p. 5). Notably, DBP has not moved to quash the subpoena. Further, John Doe failed to show how he would be harmed by DBP's compliance with the subpoena.

### 7. The cost of compliance

The Fifth Circuit also takes into consideration the cost of compliance when determining whether to quash a subpoena issued to a non-party. *Leonard*, 38 F.4th at 489. DBP publicly advertises the cost of compliance for civil subpoenas and specifically states that it charges the party who submits the subpoena.[4] As such, Plaintiffs will bear the cost of compliance.

---

[4] Domains By Proxy – Subpoena Policy/Attorney Tips (Mar. 6, 2024), http://domainsbyproxy.com/domainsbyproxy/subpoena-policies.

Given the weight of the balancing test set forth in *Leonard*, the court finds that the subpoena is not unduly burdensome. Since the court finds that neither[5] of the FRCP 45 grounds that John Doe complained of in his Motion to Quash survive scrutiny, John Doe's Motion to Quash should be denied.

## IV.    DEFENDANTS' MOTION

Similarly, even if Defendants had standing to modify the subpoena, they fail to establish that the subpoena should be modified under the law.

### A.    *The Scope as Agreed to at Mediation*

Defendants seek to modify the subpoena that was issued to DBP, but do not cite any grounds from FRCP 45, nor any other legal authority, to support their argument for modification. They request the court to narrow the subpoena to what was agreed upon at mediation (Dkt. #80, at p. 3). In their Reply, Defendants further state that the "Federal Rules do not permit discovery to expand beyond what the parties specifically negotiated and the Court memorialized" (Dkt. #83, at p. 4). Defendants claim that the mediator was explicit regarding the scope of the subpoena and that Plaintiffs may only seek the "current owner of record for" the domain (Dkt. #83, p. 4). Plaintiffs disagree and assert the subpoena "is within the scope of the agreement at mediation" (Dkt. #85, at

---

[5] John Doe made two additional arguments, that the "domain's content does not justify disclosure" and that there were "procedural irregularities that undermine fairness" such that the subpoena should be quashed (Dkt. #78, at p. 4). Both are not considered plausible or viable arguments. In terms of the argument regarding the domain's content, to the extent that John Doe argues the domain does not infringe upon Plaintiffs' trademarks, the court notes that this is not the appropriate motion to make such an argument. A motion to quash a subpoena is not an opportunity to advance one's substantive arguments about the underlying claims. And, given that John Doe is not a party to this lawsuit, he likely lacks standing to assert such a claim. Additionally, in terms of John Doe's argument about procedural irregularities, FRCP 45 clearly states that a party that issues a subpoena that requires the "production of documents [and] electronically stored information…" must then serve a "notice and a copy of the subpoena…on each **party**." FED. R. CIV. P. 45(a)(4) (emphasis added). Per Black's Law Dictionary, a "party" in the context of litigation is "[o]ne by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment." *Party*, BLACK'S LAW DICTIONARY (12th ed. 2024). As such, FRCP 45(a)(4) only contemplates providing subpoenas to parties involved in the suit, not non-parties like John Doe, or the court.

17

p. 3). The court was not present at mediation and notes that this District's General Order 14-06 requires that "[a]ll proceedings of the mediation, including statements made by a party, attorney, or other participant, are privileged and confidential in all respects." As such, the court is not aware of what the "parties specifically negotiated." Moreover, the mediator's report only memorialized that "[t]he parties agreed that Plaintiff would issue the subpoena and that Defendants would not oppose such a subpoena" (Dkt. #76). Accordingly, the court cannot determine the subpoena's breadth based on what the parties agreed to at mediation.

Since the parties are still engaged in the discovery phase of litigation, FRCP 26 applies to determine the scope and limitations of the discovery process. Pursuant to that rule:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). Plaintiffs claim that they seek "[r]ecords related to the history of the ownership, the identity of the person paying for the Infringing Domain and records related to who is in control of the website" to "determine who really owns and controls the Infringing Domain" (Dkt. #81, at p. 6). Plaintiffs assert that this information is relevant and proportional to their need to identify the actual owner of the domain (Dkt. #85, p. 3).

This information is discoverable under FRCP 26. Importantly, no claims of privilege have been made by Defendants, nor any other party, over this information. Additionally, the court already found that this information is relevant to Plaintiffs' claims when it considered the six-factor balancing test from *Leonard* and addressed the first factor under that test. This information is proportional to the needs of the case because the issue of domain ownership is central to Plaintiffs' claims (Dkt. #1) and Defendants' defenses (Dkt. #7, at p 3-4). Accordingly, the

Plaintiffs' subpoena, as it was issued, seeks discoverable information.

Defendants made two other arguments in their Motion. They assert that Plaintiffs must file the subpoena to DBP on the record and that the court should stay DBP's compliance with the subpoena pending the outcome of John Doe's Motion. Plaintiffs filed the subpoena as an attachment to their Response, so this issue is moot. However, the court notes that no local rule or Federal Rule of Civil Procedure required Plaintiffs to do so.[6] Additionally, since the court is ruling on John Doe's Motion at the same time as Defendants' Motion, the need for DBP's compliance to be stayed is moot.

It is therefore **ORDERED** that John Doe's Motion to Quash Subpoena to Domains By Proxy, LLC (Dkt. #78) is **DENIED**. It is further **ORDERED** that Defendants' Motion to Enforce Mediation Agreement, Compel Disclosure of Subpoena, and Stay Third Party Compliance Pending Resolution of Sealed Non-Party Motion (Dkt. #80) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 6th day of November, 2025.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE

---

[6] As explained above, subpoenas only need to be served on parties to the litigation. *See* FED. R. CIV. P. 45(a)(4).